UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-14148-CIV-ROSENBERG/MAYNARD

NUSRAT RIZVI,

      **Plaintiff,**

v.

EXPERIAN,

      **Defendant.**

_____/

## REPORT AND RECOMMENDATION ON
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DE 22)

    **THIS CAUSE** comes before this Court upon an Order of Reference (DE 39) and the above

Motion.  Having reviewed the parties' arguments, the record, and being otherwise fully advised,

this Court respectfully recommends that Defendant's Motion be granted.

## PROCEDURAL HISTORY

    On May 13, 2020, Plaintiff Nusrat Rizvi, proceeding pro se, filed the initial Complaint in

this matter asserting three claims for relief against Defendant Experian Information Solutions, Inc.

("Experian" or Defendant).[1]  DE 1.  Plaintiff first alleges that Experian, a credit reporting agency,

violated the Fair Credit Reporting Act ("FCRA") when it "suddenly, unexpectantly, and without

notice" lowered Plaintiff's credit score in 2017[2] and provided an insufficient explanation as to why

the change occurred.  *Id.* at ¶¶ 8-16, 24-29.  Plaintiff also asserts common law claims for negligence

---

[1] Plaintiff only identifies Defendant as "Experian" in his pleading, however Defendant self-identifies as Experian Information Solutions, Inc. in its Answer and subsequent filings.  *Compare* DE 1 (Complaint) *with, e.g.,* DE 9 (Answer) and DE 22 (Defendant's Motion for Summary Judgment).

[2] Plaintiff testified that where the Amended Complaint discusses a change to Plaintiff's credit score in 2019, *e.g.,* DE 19 at 4, he intended to write 2017.  DE 23-22 at 120:22-121:19.

and slander against Experian related to the 2017 change in his credit score.  *Id.* at ¶¶ 17-23, 31, 33-35.  On January 11, 2021, Plaintiff filed an Amended Complaint which is identical to the initial Complaint except for the addition of 19 pages of attachments.[3]  DE 19.

Defendant filed an Answer on January 25, 2021, DE 21, and filed the instant Motion for Summary Judgment on February 10, 2021, DE 22.  After being granted two extensions of time to respond, Plaintiff responded to the Motion on March 22, 2021 by filing an Affidavit in Opposition to Defendant's Motion for Summary Judgment and a copy of a letter addressed to Defendant dated in 2018.  DE 29, 30.  Two days later, Experian filed a Reply.  DE 24.

On review of Plaintiff's Response to the Motion, the Honorable Robin L. Rosenberg, the presiding judge in this case, found that the Response failed to comply with the Federal Rules of Civil Procedure, this District's Local Rules, and the Court's Order of Requirements because Plaintiff failed to file a separate Statement of Material Facts.  DE 33.  Judge Rosenberg then provided Plaintiff with detailed instructions and gave him an opportunity to file an amended response.  *Id.*

On April 14, 2021, Plaintiff filed an amended response styled "Plaintiff's Statement of Disputed Facts in Opposition to Defendant's Statement of Material Facts."  DE 35.  Defendant then filed its Amended Reply.  DE 36.  A week after Defendant filed its Amended Reply, Plaintiff moved for an extension of time to file an amended response to Defendant's Motion for Summary Judgment.  DE 38.  On review of the record, noting that two warnings had been issued to Plaintiff

---

[3] The undersigned discusses the Amended Complaint in this Report, but the analysis applies equally to the original Complaint as the two documents are identical, except for the attachment of a few exhibits.  *Compare* DE 1 *with* DE 19.  Thus, to the extent the Amended Complaint is invalid as it was filed without seeking Defendant's consent or leave of the Court as required under Federal Rule of Civil Procedure 15(a)(2) and filed after the September 11, 2020 amendment of pleadings deadline, the undersigned's Recommendation remains the same for the same reasons explained herein.

regarding extensions of time, the undersigned denied Plaintiff's request.[4]   DE 40.   Acknowledging

Plaintiff's *pro se* status, however, the undersigned noted that all of Plaintiff's submissions in

response to the Motion for Summary Judgment—the two documents filed on March 22, 2021 and

the "Statement of Disputed Facts" filed on April 14, 2021—would be considered in the disposition

of Defendant's Motion.  *Id.* at 2-3.  Thus, the instant Motion is ripe for consideration.

### FACTUAL BACKGROUND[5]

A credit score is a number used by lenders to help determine the creditworthiness of an

individual.  DE 23-8 at 2.  An individual's credit score is not stored but generated anew whenever

a lender or consumer requests a copy of that individual's credit history.[6]  *Id.* at 2.  Credit scores are

fluid and generated through proprietary statistical models based entirely on information in an

individual's credit history report.  *Id.* at 2-3; DE 23-1 at ¶ 17.  Consumer reporting agencies, such

as Defendant, do not create any credit history information in a consumer's report, but rather collect

this information from "furnishers," which include grantors of credit such as banks or mortgage

companies.  DE 23-1 at ¶ 5.  If a consumer believes that a score does not accurately reflect his

credit history, he may dispute inaccurate information in his credit report.  DE 23-8 at 2.  Upon

receiving a dispute from a consumer, a consumer reporting agency initiates a "reinvestigation"

process as to the item(s) in dispute.  DE 23-1 at ¶ 11.  Generally, the reporting agency contacts the

furnisher that provided the disputed information, which then investigates.  *Id.* at ¶¶ 12-13.  Based

---

[4] Plaintiff appealed this Order to the United States Court of Appeals for the Eleventh Circuit.  DE 41.  The appeal remains pending as of the date of this Report and Recommendation.

[5] In considering this Motion for Summary Judgment, the Court views the facts in the light most favorable to Plaintiff and draws all reasonable inferences in Plaintiff's favor.  *See Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006).

[6] When consumer request a copy of their credit information from Defendant, they receive a "credit disclosure," whereas when lenders request credit information on a consumer what they receive is called a "credit report."  DE 23-1 at ¶ 6. The undersigned generally uses the term "credit report" in this opinion to refer to disclosures of an individual's credit history, either to that consumer himself or a prospective lender.

on the results of the furnisher's investigation, the disputed information may remain, be deleted, or

be changed on the individual's credit history reported by Defendant. *Id.* at ¶ 14. A reporting agency

such as Defendant cannot determine the reasons a consumer disagrees with reported information

unless the consumer specifically identifies the credit history information being disputed. *Id.* at ¶

16. When a consumer contacts Defendant contesting a credit score without disputing specific credit

information, Defendant generally responds to that individual with a statement explaining how

credit scores are calculated and directing the consumer on how to initiate a dispute. *Id.* at ¶ 19;

*e.g.*, DE 23-8.

On September 6, 2017, Plaintiff sent a letter to Defendant raising an issue with his credit

report. DE 19 at 12; DE 23-5 at 2. The letter states:

> Sir/Madam: With reference to duration my credit history you seem to have taken a
> page from Philippine culture which is where most credit company use as their back
> offices. Poor people of that improvised [i]sland work for very little money and their
> output reflects their lack of understanding of Western business thinking.
>
> They have shown my credit history of 15 or 20 years duration with no more than
> $10,000 limit. I enclose a report about my credit history with American Express of
> over 45 years with a Platinum card with no limits.
>
> Will you please kindly look into this and advise what I have done that deletes history
> of half of my working like and subsequent erosion of mt credit worthiness.

*Id*. Included with Plaintiff's letter is a letter from BMW Financial Services addressed to Eileen

Rizvi on May 12, 2017 congratulating her on the approval of a new BMW American Express credit

card. DE 23-5 at 3.

Upon receipt of Plaintiff's September 2017 letter, Defendant initiated its reinvestigation

process. Defendant replied to Plaintiff's dispute with a letter dated September 15, 2017

communicating the reinvestigation results and explaining what Plaintiff could do if he disagreed

with the results of the inquiry. DE 23-6. The letter explains that Experian made changes, if it could,

based on the information in the dispute and otherwise contacted the company that furnished the disputed information for an investigation. *Id.* at 3. Experian's letter also included a copy of Plaintiff's credit card payment history dating back to 2002 and indicated that Plaintiff's accounts were in good standing. *Id.* at 4-12.

On December 15, 2017, Plaintiff filed a complaint against Defendant with the Consumer Financial Protection Bureau ("CFPB") regarding "incorrect information on [his] report." DE 23-7 at 2. He explained, "[m]y credit score was 830 on 11/14/201, [sic] it has been brought down a few notches for some unknown reasons although we suspect it may have a lot to do with high potency of cocaine now available at Experian." *Id.* at 3. He then requested that the CFPB "check and find reasons for this mystery," and require "[p]roper monitoring of all personal information by individuals who are free of illegal drugs." *Id.* In response to Plaintiff's CFPB complaint, Defendant conducted another reinvestigation and sent Plaintiff a letter dated December 26, 2017. DE 23-8; DE 23-1 at ¶ 34. The letter explains how credit scores are calculated and what additional options were available to Plaintiff if he still had concerns about his score. *See generally* DE 23-8.

Plaintiff wrote four more letters to Experian in 2018 concerning the decrease of his credit score. DE 23-1 at ¶ 35; DE 23-9 (letter dated April 17, 2018); DE 23-11 (letter dated May 8, 2018); DE 23-13 (letter September 17, 2018); and DE 23-15 (letter dated November 8, 2018). In response to each of Plaintiff's letters, Defendant conducted a reinvestigation. DE 23-1 at ¶ 35; DE 23-10; 23-12; DE 23-14; DE 23-18.

Plaintiff's first letter includes a photocopy of an American Express credit card and the message,

> Kindly observe I have been a platinum card holder of Am. Ex. since 1972. Have informed you and other credit reporting firms of this detail but no one seems to believe me. Can you please look into this and advise me[.] Thanks a million.

DE 23-9 at 4.  After this message and his signature, Plaintiff added,

> Furthermore[,] for a long time I enjoyed a credit score of [] 830 but a four month ago [sic] I lost 30 points for no reason or at least no one told me why such a drastic reduction in my credit score which I insist was totally unwarranted.

After reinvestigation, Defendant sent Plaintiff the dispute results in a letter dated April 27, 2018. DE 23-10.  One account was updated to reflect a recent payment and all of Plaintiff's other accounts were reported in good standing.  *Id.*

In his next letter, dated May 8, 2018, Plaintiff wrote that while he had "enjoyed" a credit rating of 840 in May of 2017, his credit score, "fell by about 5% within a few months. No satisfactory explanation has been offered from this drop and we feel this drop was unwarranted and whimsical."  DE 23-11 at 2.  The letter continues: "I am now requesting you look in this change of heart and remove the coke addicts who decide to punish us for no reasons that we can fathom." *Id.* In a reply dated May 18, 2018, Defendant explained that Plaintiff's dispute contained too limited information.  DE 23-12 at 2.  The letter suggested that Plaintiff order and review a copy of his credit report then, "indicate the item you are disputing and explain why you believe the information is inaccurate, for example: 'not mine,' 'paid in full,' 'never late,' 'included in bankruptcy,' 'incorrect name,' etc." *Id*.

Plaintiff's September 17, 2018 letter states it is his "second, formal request for an explanation as to why your institution has lowered my credit score by nearly 50 points."  DE 23-13 at 2.  The letter explains that Defendant's previous response "never states the reason for such a drop in [his] credit score" and "merely stated some obscure factors that 'may' have an adverse effect on an individual's credit score."  *Id.*  The letter continues that Plaintiff suspects "the assessment of [his] credit score was handled by an analyst in the Philippines with limited knowledge of the English language," and demands Defendant provide "the SPECIFIC reason(s) as

to why there has been such a drastic change in our credit score[.]" *Id.* (emphasis in original).  In response, Defendant sent a letter again explaining that it could not honor Plaintiff's request based on the limited information provided in his dispute and suggesting that he "indicate the specific item you are disputing and explain why you believe the information is inaccurate."  DE 23-14 at 2.

On November 8, 2018, Plaintiff's attorney, Jeffery M. Carr, Esq., sent a letter to Experian requesting a copy of Plaintiff's credit report so Plaintiff could examine it himself and "initiate the necessary dispute proceedings."  DE 23-15 at 2. The letter also stated that the "significant drop in his credit rating has caused Mr. Rizvi serious reputational harm as well as causing him severe mental distress and anxiety.  Moreover, he suffers a great deal of embarrassment and shame when creditors inform him that his rating is much lower than he once believed."  DE 23-15 at 2, Ex. 15 at 2.  In response, Defendant asked Mr. Carr to forward his client's information along with "all of your client's specific disputes."  DE 23-17 at 2 (letter from Defendant dated November 26, 2018). Defendant then sent Plaintiff a letter explaining that accurate information cannot be deleted from a personal credit report and noting that "[r]equests for your credit history remain on your personal credit report for at least two years" and "closed accounts generally display for up to 10 years from the date paid of closed."  DE 23-18 at 2, Ex. 18 at 2.

In 2020, Plaintiff and/or his wife were denied credit three times. *See* DE 23-19; DE 23-22 at 56:11-57:2, 58:20-61:25, 63:4-15, 65:7-16, 103:14-22.  Sometime in 2020, they were denied credit from Cross Country mortgage company and American Express.[7]  DE 23-22 at 56:11-57:2, 58:20-61:25, 63:4-15, 65:7-16. On March 28, 2020, Plaintiff was denied credit by Bank of America. DE 23-19.  The denial letter states that Plaintiff's Experian credit score was 579 and lists the following "key factors" as adversely affecting that credit score: "Serious delinquency[;] Too few

---

[7] There is no information in the record as to the dates of these applications or why they were denied.

accounts currently paid as agreed[;] Lack of recent bank/national revolving information[;] Time since delinquency is too recent or unknown[; and] Too many inquires last 12 months[.]"  DE 23-19 at 4.  The letter further explains that these factors related only to Plaintiff's credit score, and that "[t]he reasons for our credit decision are given separately at the beginning of this letter." *Id*. The letter lists those reasons as: "Current or past delinquency, derogatory public record(s), and/or collection accounts(s)[;] Number of accounts, paid as agreed, is too low or you've missed payments recently on some of your accounts[;] You do not have sufficient credit references with recent payment history[;] Current or past delinquency with one or more of your creditors." *Id.* at 2. Plaintiff did not contact Bank of America for any further explanation as to why they denied him credit.  DE 23-22 at 113:20-23.

On August 11, 2020, Defendant generated Plaintiff's credit report as part of the instant litigation.  DE 23-20; DE 23-22 at 112:20-113:4. This report shows that Plaintiff's account with Verizon Wireless, opened in November of 2012, had a past due balance of $1,517.00 and was in collection from January through June 2020.  DE 23-20 at 3.  That account was then paid in settlement for less than the full balance and closed in July 2020.  *Id.*  The report also shows an American Express credit card account with a balance of $47.00 past due as of August 2020.  *Id.* All the other accounts reported were in good standing.  *Id.*  Plaintiff acknowledged that it was possible that Bank of America denied him credit because of the American Express or Verizon accounts. DE 23-22 at 118:6-11; 119:17-23.

At his deposition taken on December 17, 2020, Plaintiff reviewed the credit reports provided to him by Experian in response to several of his disputes.  DE 23-22 at 84:23-89:17 (discussing report from 2017); 90:23-93:12 (discussing report from 2018); 93:17-98:14 (discussing report from 2019).  Upon reviewing the credit history information contained in his December 16,

2017 dispute results, Plaintiff testified, "I see nothing that's inaccurate here."  DE 23-22 at 89:12-13.  After reviewing the credit history information contained in his April 27, 2018 dispute results, Plaintiff also testified that everything in the credit report was accurate. *Id.* at 93:6-12.  After reviewing his credit report from August 3, 2019, Plaintiff again testified that everything in the credit report was accurate. *Id.* at 98:5-14.  However, in reference to the August 2019 report, during his deposition, Rizvi registered confusion about his American Express account, stating: "Wait. This card number, date open, May, March 2016. . . . The address, credit card – terms, one month, credit limit, not reported, high balance, does not sound like mine. Go ahead. I have questions." *Id.* at 117:21-22, 118:3-5.  When asked if he ever disputed any information in his credit report with Experian, Plaintiff replied "I think five or six letters were sent to you by me or a guy that represented me." *Id.* at 125:11-12.  He later confirmed that the only thing that he disputed was his credit score, not any of specific information in his credit report. *Id.* at 126:10-12, 126:20-127:3.

<h3 style="text-align:center">PLAINTIFF'S PRO SE STATUS</h3>

*Pro se* filings are held to a less stringent standard than pleadings drafted by attorneys and are afforded liberal construction by courts. *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998); *Loren v. Sasser*, 309 F.3d 1296, 1301 (11th Cir. 2002) ("In the summary-judgment context, we have construed *pro se* pleadings more liberally than those of a represented party.").  However, "a pro se litigant does not escape the essential burden under summary judgment standards of establishing that there is a genuine issue as to a fact material to his case in order to avert summary judgment." *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).

The Eleventh Circuit has directed that particular care be exercised regarding motions for summary judgment against unrepresented parties.  That Court has explicitly directed that "[a] motion for summary judgment should only be granted against a litigant without counsel if the court

gives clear notice of the need to file affidavits or other responsive materials and of the consequences of default." *United States v. One Colt Python .357 Cal. Revolver, S/N T03461 W/Holster*, 845 F.2d 287, 289 (11th Cir. 1988). Thus, courts in this District generally provide *pro se* litigants with procedural guidance on responding to a motion for summary judgment. *See, e.g., Turnquist v. Noll*, No. 10-80030-CIV, 2011 WL 4637011, at *2 (S.D. Fla. Oct. 5, 2011) (providing instructions and the opportunity to file an amended response to a motion to summary judgment where the pro se plaintiff had filed a response before the court could issue guidance on responding to the motion). The District Court provided Plaintiff with such guidance in great detail in an Order dated April 2, 2021. DE 36 at 2-3 (explanation including pictures of the Court's CM/ECF filing system and a hypothetical example of a statement of material facts). The Order also includes a warning that Plaintiff's facts "must be supported by specific references to pleadings, depositions, answers to interrogatories, admissions, and affidavits on file with the court" and that Defendant's facts may be deemed admitted should he fail to controvert those facts with evidence. *Id.* at 2. Thus, the order gave "clear notice of the need to file affidavits or other responsive materials" and "of the consequences of default." *See One Colt Python*, 845 F.2d at 289.

## STANDARD OF REVIEW

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The existence of a factual dispute is not by itself sufficient grounds to defeat a motion for summary judgment; rather, "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A dispute is genuine if a "reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (citing *Anderson*, 477 U.S. at 247-48). A

fact is material if "it would affect the outcome of the suit under the governing law." *Id.* (citing *Anderson*, 477 U.S. at 247-48); *Kerr v. McDonald's Corp.*, 427 F.3d 947, 951 (11th Cir. 2005). If a genuine dispute of material fact exists, the Court must deny summary judgment. *Skop v. City of Atlanta*, 485 F.3d 1130, 1140 (11th Cir. 2007).

In this case, Defendant—as the moving party—bears "the initial responsibility of informing the district court of the basis for [the] motion and identifying those portions of [the record] which [they] believe demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)(1)(A)); *see also Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008). Where Plaintiff has the burden of proof on an issue at trial, Defendants may simply "[point] out to the district court that there is an absence of evidence to support the [Plaintiff's] case." *Id.* at 325. Once Defendant satisfies this burden, Plaintiff "must do more than simply show that there is some metaphysical doubt as to the material facts." *Ray v. Equifax Info. Servs., LLC*, 327 F. App'x 819, 825 (11th Cir. 2009) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Rather, Plaintiff "must make a sufficient showing on each essential element of the case for which [he has] the burden of proof." *Id.* (citing *Celotex Corp.*, 477 U.S. at 322). Plaintiff must come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co.,* 475 U.S. at 587. "A mere 'scintilla' of evidence" will not do; there must enough of a showing to demonstrate that a reasonable jury could find in Plaintiff's favor. *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990). If Plaintiff fails to make a sufficient showing, Defendant is entitled to judgment as a matter of law. *Celotex Corp.,* 477 U.S. at 323.

**DISCUSSION**

Defendant asserts four arguments in support of its Motion for Summary Judgment. *See generally* DE 22. First, Defendant argues that that any claim under the FCRA related to the 2017 change in Plaintiff's credit score is time-barred. *Id.* at 13. Second, it argues that Plaintiff's FCRA claims fail because accurate credit reporting is a complete defense under the FCRA, and Plaintiff does not dispute the accuracy of any specific information in his Experian credit file. *Id.* at 15. Third, Defendant argues that Plaintiff fails to provide any evidence to support his claims for damages. *Id.* at 17. Lastly, Defendant contends that Plaintiff's common law claims for negligence and slander are preempted by the FCRA. *Id.* at 22. The Court considers Plaintiff's claims in light of these arguments.

**I.      FCRA Claim**

Plaintiff alleges that Defendant knowingly, willfully, and intentionally violated the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*, by not fully and fairly investigating his disputes regarding the drop in his credit score in 2017 and in continuing to maintain an "erroneous" credit score of 745. *See* DE 19 at 6-7; *see also* DE 23-22 at 120:22-121:19 (Plaintiff's deposition testimony explaining that the mention of 2019 in the Amended Complaint was intended to be 2017). While Plaintiff does not specify the specific subsection of the FCRA he claims Defendant violated, only invoking the statute generally, Defendant identifies two provisions of the FCRA potentially relevant to Plaintiff's claim—15 U.S.C. § 1681e(b) or § 1681i(a). DE 22 at 8; *see* DE 19. As Plaintiff proceeds *pro se,* the Court liberally construes Plaintiff's allegations as asserting his FCRA claim under both sections. *See Espinosa v. Burger King Corp.,* 519 F. App'x 991 (11th Cir. 2013).

Section 1681e of the FCRA provides that a consumer reporting agency "shall follow reasonable procedures to assure maximum possible accuracy of the information" about an

individual in preparing a consumer credit report.  15 U.S.C. § 1681e(b).  Section 1681i states that "if the completeness or accuracy of any item of information contained in a consumer's file . . .  is disputed by the consumer . . . the agency shall . . . conduct a reasonable reinvestigation to determine whether the disputed information is accurate."  *Id.* § 1681i(a)(1)(A).  Upon completion of the reinvestigation, the credit reporting agency is required to notify the consumer of the results with a description of the procedure it used to verify the information and an updated report, and to inform the consumer of the right to file a statement disputing the accuracy or completeness of the information.  *Id.* § 1681i(a)(6).  The FCRA also provides an exception to this obligation to reinvestigate where the agency "has reasonable grounds to believe that the dispute by the consumer is frivolous or irrelevant."  *Id.* § 1681i(a)(3).

### A.     Accuracy of Plaintiff's Credit Reports

To state a claim under section 1681e, the plaintiff must show (1) the agency's report contained factually inaccurate information; (2) the procedures the agency took in preparing and distributing the report were not "reasonable," and (3) plaintiff was damaged as a result.  *Losch v. Nationstar Mortg. LLC*, 995 F.3d 937, 944 (11th Cir. 2021) (citing *Cahlin v. General Motors Acceptance Corp.*, 936 F.2d 1151, 1157, 1160 (11th Cir. 1991).  "The elements of a claim under [section] 1681i – which focuses on the consumer's credit 'file' rather than his credit 'report'—are the same, except that the plaintiff needn't show that the agency prepared and distributed a report."  *Id.* (citing *Collins v. Experian Info. Sols., Inc.*, 775 F.3d 1330, 1335 (11th Cir. 2015).  In most cases, whether a credit-reporting agency acted reasonably under the FCRA will be a jury question.  *Cahlin*, 936 F.2d at 1156.

In this case, Plaintiff has failed to meet the first element of a claim under either section 1681(e)(b) or 1681i(a), which requires him to show Defendant's report contained a factual

inaccuracy.  As recounted in detail above, Plaintiff's multiple letters to Experian concern the general drop in his credit score.  *See* DE 23-5 at 2; DE 23-7 at 3; DE 23-9 at 4; DE 23-11 at 2; DE 23-13; and DE 23-15.  He acknowledged during his deposition that he was not disputing any factual inaccuracies in his credit history, only his overall credit score.  DE 23-22 at 126:10-12 ("Q: Mr. Rizvi, the only things that you disputed was your credit score, correct?  A: Yes."), 126:20-127:3 ("Q: You just said right now the only thing that you are focused on is the credit score, is that correct?  A: Why should I focus on anything else? . . . Credit score is the only thing and that's the thing.").  He also reviewed a credit report from 2017, 2018, and 2019 during his deposition and confirmed there were no accuracies in the reports.  DE 23-22 at 84:23-89:18 (discussing report from 2017), 89:15-18 ("Q: So to confirm, you see nothing in your credit report from December 26, 2017 that is inaccurate, correct?  A: Yes."); 90:23-93:12 (discussing report from 2018), 93:6-11 ("Q: So is there anything in this credit report from April 27, 2018 that is inaccurate?  A. I don't see any.  Q: Is it your testimony today that everything, all of the information in the credit report is accurate?  A: Yes."); 95:17-98:14 (discussing 2019 report), 98:5-14 ("Q: Mr. Rizvi, have you reviewed the entirety of the credit report . . . dated August 3, 2019?  A: I have, yeah.  Q: Is there anything inaccurate about this report?  A: No, no.").  Thus, there is no genuine dispute in the record as to a factual inaccuracy in any of Plaintiff's credit history reports.[8]

---

[8] Plaintiff's first letter to Defendant, dated September 6, 2017, requests Defendant "look into" why his credit history shows "a 15 or 20 years duration with no more than $10,000 limit" but, Plaintiff alleges, he has "credit history with American Express of over 45 years with a Platinum card with no limits."  DE 23-5 at 2; *see also* DE 23-9 at 4 (April 17, 2018 dispute letter also mentioning that Plaintiff has been an Am. Ex. holder since 1972); DE 23-11 at 2 (same from May 8, 2018).  Defendant initiated its reinvestigation proceedings in response to each of these requests and provided timely responses to Plaintiff.  *See* 15 U.S.C. § 1681i(a)(1)(a) (requiring a credit reporting agency to reinvestigate a disputed item "before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer.").  One of its responses to Plaintiff explains that "positive information *may* remain on a report indefinitely" however some information is not displayed after 10 years.  DE 23-18 at 1 (emphasis added).  Plaintiff provides no evidence of the details of this account that would contradict any of the credit reports in the record and create a dispute of fact as to the accuracy of the reported information.

In his initial Response to Defendant's Motion, Plaintiff appears to seek additional time for discovery to dispute the accuracy of his credit reports. *See* DE 29 at 5. He states, "the plaintiff should be permitted to pursue his claim through the discovery process, to gather information critical to supporting meritorious position, with the aid of interrogatories, admissions, production of document demands, subpoenas, and depositions." *Id.* He also appears to argue that Defendant's Motion is premature. *See id.* ("[Defendant] seek[s] to short cut plaintiff's indispensable trial right by prematurely seeking summary judgment to have plaintiff's civil complaint **dismissed, without the benefit of discovery**, depriving the plaintiff of obtaining information to marshal his best case." (emphasis in original)). The undersigned liberally construes Plaintiff's requests for more discovery as a request under Federal Rule of Civil Procedure 56(d). Rule 56(d) provides:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>
> (1) defer considering the motion or deny it;
>
> (2) allow time to obtain affidavits or declarations or to take discovery; or
>
> (3) issue any other appropriate order.

Fed. R. Civ. P. 56(d). Generally, litigants moving under Rule 56(d) are required to show: "(1) what particular discovery the movant intends to seek; (2) how that discovery would preclude the entry of summary judgment; and (3) why this discovery has not been or could not have been obtained earlier." Steven Baicker-McKee et al., Federal Civil Rules Handbook, Rule 56 at 1213 8 (2021); *Jeffries v. Barr*, 965 F.3d 843, 855 (D.C. Cir. 2020); *Doe v. City of Memphis*, 928 F.3d 481, 490 (6th Cir. 2019). Plaintiff fails to proffer argument as to any of these factors. This action has been pending since May 13, 2020. DE 1. Judge Rosenberg entered the Scheduling Order in this case on July 13, 2020, the *first line* of which states, "the Court hereby **ORDERS** that **discovery shall begin immediately**." DE 11 at 1. (emphasis in original). Plaintiff was also aware that discovery

in this case was ongoing because he was noticed for a deposition on November 24, 2020 and deposed by Defendants on December 17, 2020.  DE 23-21 (deposition notice); DE 23-22 (deposition transcript).  Yet, Plaintiff provides no excuse for why he did not pursue the discovery listed in his Response during this matter's discovery period.  Plaintiff also fails to explain how additional discovery would help him identify a factual inaccuracy in his credit reports when he has reviewed or received multiple reports on multiple occasions and stated the reports contained no inaccuracies.  *E.g.*, DE 23-22 at 89:15-18, 93:6-11, 98:5-14.  Because Plaintiff failed for to pursue the discovery he now claims to need or shown how additional discovery would preclude summary judgment, his request for relief under Rule 56(d) should be denied. *See Latele Television, C.A. v. Telemundo Commc'ns Grp.*, LLC, 2014 WL 7272974, at *4 (S.D. Fla. Dec. 18, 2014) ("While it may be correct that [plaintiff] wants or needs more discovery, that alone is insufficient to preclude summary judgment or to defer a ruling under Rule 56(d). If a party never timely seeks discovery, then a request for more discovery in response to a summary judgment motion is usually not a convincing ground to postpone a ruling.").

Because there is no genuine dispute of material fact as to whether Plaintiff has shown a factual inaccuracy on his report, Defendant's motion for summary judgment should be granted.[9]

**B.     Statute of Limitations**

Defendant also contends that Plaintiff's FCRA claim is time barred.  The FCRA's statute of limitations provides:

> An action to enforce any liability created under this title may be brought in any appropriate United States district court . . . not later than the earlier of

---

[9] A plaintiff may recover for negligent and willful violations of sections 1681e and sections 1681i.  *Losch*, 995 F.3d at 944.  A showing that factually inaccurate information was reported or contained in a consumer's file is a requirement for both.  *See id.* at 944-945 (discussing the "prefatory matter" of whether the Plaintiff has shown factually inaccurate information was reported before addressing whether Experian negligently or willfully violated the FCRA).  As Plaintiff fails to raise a genuine dispute of material fact regarding this issue, the undersigned does not separately discuss negligent or willful violations of the FCRA.

(1) 2 years after the date of discovery by the plaintiff of the violation that is the basis for such liability; or

(2) 5 years after the date on which the violation that is the basis for such liability occurs.

15 U.S.C. § 1681p. Because the limitations period begins to run upon "discovery . . . of the violation," timeliness depends on when exactly Plaintiff discovered the purported section 1681e(b) or 1681i(a)(2) violation.

Many courts have found that discovery of the violation occurs when the consumer becomes aware that his or her credit information is being reported inaccurately as demonstrated by a dispute of the information with a consumer reporting agency. *See, e.g., Bailey v. Equifax Credit Info. Servs., Inc.*, No. 14-CV-00797, 2016 WL 11540113, at \*14 (N.D. Ga. Nov. 28, 2016), *report and recommendation adopted*, 2017 WL 10728913 (N.D. Ga. Jan. 9, 2017); *Bermudez v. Equifax Info. Servs., LLC,* No. 07-CV-1492, 2008 WL 5235161, at \*2 (M.D. Fla. Dec. 15, 2008) (considering the date pro se Plaintiff submitted first of several disputes in finding any cause of action based on that issue to be time-barred); *see also Campbell v. AmeriCredit*, No. 09-CV-3115, 2010 WL 11647339, at \*4 (N.D. Ga. Aug. 9, 2010), *report and recommendation adopted*, 2010 WL 11647494 (N.D. Ga. Sept. 2, 2010) ("Plaintiff does not specifically allege when he discovered the violation, but his Complaint makes clear that he was aware of a violation prior to October 2003 because he disputed the AmeriCredit information during that month.").[10]  For claims under section 1681i(a) of the FCRA, liability arises when the CRA "allegedly violate[s] its duty under the FCRA

---

[10] Other courts have found the statute of limitations period triggered for a section 1681e(b) claim when the consumer reporting agency issues an inaccurate consumer report. *Parker v. Parker*, 124 F. Supp. 2d 1216, 1221 (M.D. Ala. 2000); *see also Strickland v. Chase Bank USA, Nat'l Ass'n*, No. 08-CV-3270, 2009 WL 10712256, at \*6 (N.D. Ga. July 2, 2009), *report and recommendation adopted*, 2009 WL 10712252 (N.D. Ga. Aug. 24, 2009) ("Liability arises under § 1681e(b) when the consumer reporting agency issues an inaccurate consumer report." (quoting *Lawrence v. Trans Union LLC*, 296 F. Supp. 2d 582, 587 (E.D. Pa. 2003))).

to reinvestigate." *Parker v. Parker*, 124 F. Supp. 2d 1216, 1222 (M.D. Ala. 2000); *Strickland*, 2009 WL 10712256, at *7.  Section 1681i(a)(1)(a) requires the CRA to reinvestigate a disputed item "before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer." 15 U.S.C. § 1681i(a)(1)(a).  "Therefore, liability arises under 1681i thirty days after the consumer reporting agency receives notice of the disputed item from the consumer." *Strickland*, 2009 WL 10712256, at *7; *Campbell*, 2010 WL 11647339, at *3 ("[T]he violation occurred within thirty days after Plaintiff disputed the AmeriCredit debt.").

As previously discussed, however, there is no evidence that Experian ever issued an inaccurate consumer report regarding Plaintiff.  Thus, the statute of limitations cannot be calculated as it was never triggered in the first place.  Regardless, any claim based on his disputes in the record in this case would be time-barred.  Plaintiff initiated this matter on May 13, 2020.  DE 1.  Thus, any claims that arose on or before May 12, 2018 are barred by the statute of limitations.  Plaintiff first contacted Defendant regarding his 45-year history with American Express on September 6, 2017.  DE 23-5 at 2.  This dispute also mentions the "erosion of [his]creditworthiness," but not explicitly his credit score.  *Id.*  His first dispute to explicitly mention the 2017 drop in his credit score was his complaint filed with the CFPB on December 15, 2017.  DE 23-7 at 4.  Accounting for the thirty days necessary for a claim under section 1681i, the latest "discovery" date for Plaintiff's FCRA would be January 14, 2018.  Since this is more than two-years before the date Plaintiff initiated this suit,  any claims under the FCRA are time-barred.  *See Bermudez v. Equifax Info. Servs., LLC*, No. 07-CV-1492, 2008 WL 5235161, at *2 (M.D. Fla. Dec. 15, 2008).

As there is no genuine dispute of fact regarding the accuracy of Plaintiff's credit reports, and any claim based on Plaintiff's disputes thereof would be time-barred, Defendant should be granted summary judgment as to Plaintiff's FCRA claim.[11]

## II.   Common Law Claims

Plaintiff also asserts two common law claims for negligence and slander related to the 2017 decrease in his credit score.  DE 19 at 5.  Regarding negligence, Plaintiff contends that Defendant breached "its duty of fairness in maintaining [his] credit score" by "arbitrarily" downgrading it from 850 to 745 causing Plaintiff to suffer increased interest in all future potential credit.  *Id.* at 8. As to slander, Plaintiff contends that Defendant "published an erroneous consumer credit report of the plaintiff, erroneously downgrading [his] consumer credit score from 840 to 745, making it available to creditor [and] future potential creditors."  *Id.*  "That credit report was inaccurate and untrue in reporting [his] credit score at 745," he continues, and "defendant knew or should have known that . . . was untrue and unfair." *Id.* at 8-9.

Section 1681h[12] of the FCRA, provides that "no consumer may bring any action or proceeding in the nature of defamation, . . . or negligence with respect to the reporting of information against any consumer reporting agency, . . . except as to *false information* furnished

---

[11] In light of the foregoing reasons to grant Defendant's Motion as to Plaintiff's FRCA claim, the undersigned does not separately address Defendant's argument regarding damages.

[12] Section 1681h(e) was adopted in 1970 as a part of the original FCRA.  *Sylvester v. GE Cap. Retail Bank*, No. 6:12-CV-00341, 2013 WL 314452, at *2 (M.D. Fla. Jan. 28, 2013); *see also* The Fair Credit Reporting Act, Pub.L. 90-321, § 610, as added Pub.L. 91-508, § 601, 84 Stat. 1131 (1970). In 1996, another comprehensive preemption provision was added to the FCRA, which provides that the FCRA does not exempt any person from complying with the laws of any state except with respect to any subject matter regulated under dozens of specifically enumerated subsections of the FCRA. 15 U.S.C. § 1681t(b).  Courts have taken several approaches in reconciling the two exemption provisions.  *See, e.g., Howard v. DirecTV Grp., Inc.*, No. CV 109-156, 2012 WL 1850922, at *6 (S.D. Ga. May 21, 2012) (discussing three approaches); *Johnson v. Citimortgage, Inc.*, 351 F. Supp. 2d 1368 (N.D. Ga. 2004) (adopting "statutory" approach which holds that section 1681t(b)(1)(F) applies to state statutory law claims, while section 1681h(e) applies to state common law claims).  However, "even under the most permissive approach Plaintiffs still must show 'malice or willful intent to injure.'" *Sylvester*, 2013 WL 314452, at *2.  Thus, the undersigned only discusses Plaintiff's claims in the context of section 1681h(e).

with *malice or willful intent* to injure such consumer." 15 U.S.C. § 1681h(e) (emphasis added).

Plaintiff's claim of slander is clearly encompassed by the term "in the nature of defamation" in

Florida law. *See Sailboat Key, Inc. v. Gardner*, 378 So. 2d 47, 48 (Fla. Dist. Ct. App. 1979) ("Libel

and slander involve defamation of personal reputation"); *Gibson v. Maloney*, 231 So. 2d 823, 828

(Fla. 1970) (Thornal, J. dissenting) ("Slander and libel are terms referring to a wrongful defamation

of the character of another."). Thus, by the FCRA's express language, Plaintiff's state law claims

are preempted unless the information furnished by Defendant was false and communicated with

malice or willful intent to injure Plaintiff. *See Stroud v. Bank of Am*., 886 F. Supp. 2d 1308, 1322

(S.D. Fla. 2012) ("[T]o avoid preemption of a common law claim in the nature of ... negligence, a

consumer must base claim on false information furnished with malice or willful intent to injure

such consumer."). Malice under the common law of Florida "is present where the primary motive

for the statement is shown to have been an intention to injure the plaintiff." *Nodar v. Galbreath*,

462 So. 2d 803, 806 (Fla. 1984) (discussing malice in relation to defamation).

On review of the record, it is clear that Plaintiff's claims for negligence and slander are

preempted by the FCRA. To begin, as discussed above, there is no evidence in the record that

Defendant produced any inaccurate or untruthful information in Plaintiff's credit reports.

Plaintiff's dispute letters concern the general drop in his credit score. *See* DE 23-5 at 2; DE 23-7

at 3; DE 23-9 at 4; DE 23-11 at 2; DE 23-13; and DE 23-15. Upon review of three separate credit

reports at his deposition, Plaintiff conceded there was no inaccurate information contained in any

of them. DE 23-22 at 84:23-89:18, 90:23-93:12; 95:17-98:14.

Even if there was a dispute of fact as to the truthfulness of the information reported by

Defendant, however, Plaintiff's claims would nonetheless be preempted because he has provided

no evidence that Defendant acted with "malice or willful intent to injure" him in issuing his credit

report. 15 U.S.C. § 1681 h(e).  Plaintiff broadly alleges that Defendant was "knowing, willful, and intentional" in violating their duty to reinvestigate his claims regarding the decrease in his credit score, DE 19 at 7, but conclusions and speculation will not do.  *See Evers*, 770 F.2d at 986 ("conclusory allegations without specific supporting facts have no probative value"); *United States v. Collins*, No. 14-80409-CIV, 2015 WL 12556167, at *2 (S.D. Fla. Apr. 3, 2015) ("The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts."); *Aldabblan v. Festive Pizza, Ltd.*, 380 F. Supp. 2d 1345, 1353 (S.D. Fla. 2005) ("Plaintiff's mere belief, speculation, or conclusory allegations . . . are insufficient to withstand summary judgment.").  When asked if he though Defendant intentionally decided not to reinvestigate his dispute, Plaintiff did not say yes.  DE 23-22 at 129:9-13.  Instead he responded regarding a newspaper article "where a credit agency did hanky-panky."  *Id.*  When prompted to describe his allegation of slander, Plaintiff made no mention of malicious or willful intent.  *Id.* at 134:4-13.  The closest he comes is simply saying, "I pleaded with everybody in your firm to please get me out of here and there was absolutely no effort on your part to do this.  *Id*. at 134:8-10. This testimony from Plaintiff is insufficient for a reasonable jury to find that Defendant acted with malice or the willful intent to injure Plaintiff. *Walker v. Darby,* 911 F.2d 1573, 1577 (11th Cir. 1990) ("A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party."); *Chambers v. Walt Disney World Co.*, 132 F. Supp. 2d 1356, 1363 (M.D. Fla. 2001) ("To avoid summary judgment, the opposing party must come forward with specific facts that are material and of a substantial nature, not . . . speculative, nor merely suspicious.").   (intern quotation omitted)).  A "nonmoving party, even if a *pro se* [individual], cannot rely solely on his complaint and other initial pleadings to contest a motion for summary judgment . . . but must respond with affidavits,

depositions, or otherwise to show that there are material issues of fact which require a trial." *Eggleton v. Jackson*, No. 09-CV-81292, 2011 WL 1988518, at \*2 (S.D. Fla. May 2, 2011), *report and recommendation adopted*, 2011 WL 1988540 (S.D. Fla. May 23, 2011).  Plaintiff has not done so here.  There is no evidence in the record that Defendant reported false information in Plaintiff's credit report with malice or willful intent. Plaintiff's common law claims are therefore preempted by the FCRA.[13]  *See Stroud*, 886 F. Supp. 2d at 1322 (finding defamation claim preempted under section 1681h(e) where the plaintiff "failed to present competent evidence of the requisite malice or willful intent"); *Ponder v. Experian Info. Sols., Inc.*, No. 1:19-CV-5494-CAP-JSA, 2021 WL 2688648, at \*24 (N.D. Ga. May 18, 2021) (same).

## CONCLUSION

Upon review of the record, Plaintiff has failed to produce any evidence that Experian ever furnished inaccurate information or otherwise violated the FCRA in responding to his various dispute letters.  Plaintiff has also failed to produce any evidence that Defendant acted with malice or willful intent in responding to his disputes, thus his common law claims are preempted by the FCRA.  While Plaintiff may disagree with this conclusion and believe otherwise, he has not produced any evidence to support his disagreement and beliefs. Accordingly, the undersigned respectfully **RECOMMENDS** that Defendant's Motion for Summary Judgment (DE 22) be **GRANTED**.

---

[13] Even if Plaintiff's common law claims were not preempted, summary judgment in Defendant's favor as to these claims would still be warranted because Plaintiff fails to provide any evidence to create a genuine dispute of material fact as to his negligence or slander claims.  *Cf. Mesa v. Pennsylvania Higher Educ. Assistance*, No. 16-24577-CIV, 2018 WL 1863743, at \*5 (S.D. Fla. Mar. 15, 2018), *report and recommendation adopted*, No. 16-24577-CIV, 2018 WL 11202683 (S.D. Fla. May 4, 2018) (granting motion to dismiss credit slander claim because "[the plaintiff] never describes, with any specifics, the false statements the [consumer reporting agency] Defendants purportedly published.").

The parties shall have fourteen (14) days from the date of this Report and Recommendation within which to file objections, if any, with the Honorable Robin L. Rosenberg, the United States District Judge assigned to this case.  Failure to file timely objections shall bar the parties from a de novo determination by the District Court of the issues covered in this Report and Recommendation and bar the parties from attacking on appeal the factual findings contained herein.  *LoConte v. Dugger*, 847 F.2d 745, 749-50 (11th Cir. 1988), *cert. denied*, 488 U.S. 958 (1988).  **Conversely if a party does not intend to object to this Report and Recommendation, then that party shall file a Notice of such within five (5) days of the date of this Report and Recommendation.**

**DONE AND SUBMITTED** in Chambers at Fort Pierce, Florida, this 2nd day of August, 2021.

SHANIEK M. MAYNARD
UNITED STATES MAGISTRATE JUDGE